

The following constitutes the order of the Court.
Signed: September 6, 2022

_____
**Charles Novack
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re:<br><br>MICHAEL K. CARR AND CHERI A. DELACY,<br><br>Debtors. | Case No. 21-10540 CN<br>Chapter 7 |
|---|---|
| ERNEST MORRISON AND CLAUDETTE MORRISON,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL K. CARR AND CHERI A. DELACY,<br><br>Defendants. | Adversary No. 22-1003 CN<br><br>**MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS ADVERSARY PROCEEDING** |

On July 22, 2022, this court conducted a final hearing on defendants Michael Carr and Cheri Delacy's motion to dismiss the first amended complaint (the "Complaint") in this adversary proceeding for failing to state a claim for relief under Federal Rule of Bankruptcy Procedure 7012(b)(6). All appearances were noted on the record. For the reasons stated below, Defendants' motion is granted without leave to amend.

The standard for determining whether a claim for relief should be dismissed under Federal Rule of Civil Procedure 12(b)(6), incorporated into the Federal Rules of Bankruptcy Procedure under Rule 7012, is well established. When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez,* 32 F.3d 1382, 1384 (9th Cir. 1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Conclusions of law, conclusory allegations, unreasonable and unwarranted inferences or deductions need not, however, be accepted. *Barapind v. Reno*, 72 F. Supp. 2d 1132, 1141 (E.D. Cal. 1999). Instead, the factual allegations in the complaint must state a claim for relief that is factually plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twomby*, 550 U.S. at 570. *Twomby* and *Iqbal* highlight the need to allege sufficient, factual allegations and avoid formulaic recitations of the elements of the claim for relief. A complaint must allege facts which will establish a plausible, not a possible claim for relief. A complaint alleges facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Bare assertions that "do nothing more that state a legal conclusion—even if that conclusion is cast in the form of a factual allegation" are discounted. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Determining whether a complaint states a plausible claim is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Although a bankruptcy court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, *Doe v. United States (In re Doe),* 58 F.3d 494, 497 (9th Cir. 1995), the court need not grant leave to amend if amendment of the complaint would be futile. *See Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1051–52 (9th

Cir. 2008) (finding that amendment would be futile where plaintiff was granted leave to amend once and the amended complaint contained the same defects as the prior complaint).

The Complaint alleges that Ernest and Claudette Morrison ("Plaintiffs") are octogenarians who sold their eponymous travel agency to defendant Cheri DeLacy and Michael Carr ("Defendants") in 2017 for $1,125,000, of which $60,000 was paid in cash. The Plaintiffs financed the balance by accepting a $1,065,000 note secured by certain collateral, including a stock pledge (the "Note"). The Note required $10,000 monthly payments until the balance was paid, and was, initially, non-interest bearing. The Defendants made the monthly Note payments from May 2017 until July 2019. In June 2019, the travel agency lost a significant client – Fisher Investments – and at Defendants' request, the parties amended the Note in August 2019 to (among other things) suspend the monthly Note payments for five months. The suspension was to last until January 2020, at which time the Defendants were to resume their regular monthly payments. Defendants did not resume the monthly payments, and Plaintiffs, by letter dated February 20, 2020, provided Defendants 90 days (as authorized by the Note) to cure their default. Defendants did not cure the default. In March 2021, Defendant DeLacy wrote to Plaintiffs and informed them that the COVID pandemic had devastated the business and left Defendants with significant COVID related debt in addition to the Note. DeLacy's letter further stated that it made little sense for the Defendants to continue operating the travel agency with this debt – which included the approximately $1 million Note balance. She asked that Plaintiffs forgive the Note balance, and reminded the Plaintiffs that they had at least received, through the Note payments that were made, the fair market value of the travel agency. The Note amount apparently reflected a certain multiple of the fair market value.

Plaintiffs allege that notwithstanding the dire financial straits described by DeLacy in her March 2021 letter, Defendants purchased a home a week earlier (which included a $173,000 down payment[1]) and bought a new car in December 2021. Plaintiffs allege that

---

[1] The Complaint does not include any allegations regarding the source of the down payment. Defendants attached certain documentation to their initial response to the motion

Defendants knew that the Plaintiffs relied on the Note payments to fund their retirement, and that Defendants could have used the cash that funded their down payment to re-commence Note payments. Plaintiffs further state that Defendants did not attempt to negotiate to reduce the monthly Note payments because they believed that Plaintiffs were too feeble to retain counsel and sue to recover the Note balance.

The Complaint alleges that Defendants' conduct was willful and malicious and thus non-dischargeable under Bankruptcy Code § 523(a)(6). Section 523(a)(6) generally requires a plaintiff to allege that the defendant had committed an intentional tort under state law, and that the tortious conduct in question was willful and malicious. This two-step process (and pleading requirement) typically excludes contract breach claims from § 523(a)(6) consideration. A simple breach of contract will not support an (a)(6) claim for relief. *See Lockerby v. Sierra*, 535 F.3d 1038, 1042 (9th Cir. 2008). The question posed by this adversary proceeding is under what circumstances does an intentional contract breach also constitute tortious conduct. The court looks to California law to answer this question. Plaintiffs direct this court to *Petralia v. Jercich*, which holds:

> Under California law, conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law. Outside the area of insurance contracts, tort recovery for the bad faith breach of a contract is permitted only when in addition to the breach of the covenant [of good faith and fair dealing] a defendant's conduct violates a fundamental public policy of the state.

*Petralia v. Jerich (In re Jerich)*, 238 F.3d 1202, 1206 (9th Cir. 2001). Here, Plaintiffs assert that the relevant tort is that of elder abuse, found in California Welfare and Institutions Code §§ 15610, *et seq*. Section 15610.30 defines financial elder abuse as follows:

> (a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

---

to dismiss which indicated the source of the down payment. For the reasons stated on the record, this court excluded this documentation under F.R.B.P. 7012(d) and declined to treat the motion to dismiss as a summary judgment motion.

> (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
>
> (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
>
> (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.
>
> (b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.
>
> (c) For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult.

At first glance, Plaintiffs make a compelling argument that they have sufficiently alleged an associated, intentional tort under California law. Plaintiffs contend that Defendants' intentional breach of the Note violated the Elder Abuse statute,[2] which protections safeguard an important public policy of the State of California. *See* Cal. Wel. & Inst. Code § 15600; *see also Bickel v. Sunrise Assisted Living*, 141 Cal. Rptr. 3d 586, 593 (Cal. Ct. App. 2012). They refer this court to several cases (none of which are binding precedent) which state that a contract breach—including the failure to make promissory note payments—can constitute elder abuse. *See, e.g., O'Brien v. XPO CNW, Inc.*, 362 F. Supp. 3d 778 (N.D. Cal. 2018); *Paslay v. State Farm General Ins. Co.*, 203 Cal. Rptr. 3d 785 (Cal. Ct. App. 2016); *O'Laverty v. Far*, 2019 Cal. App. Unpub. LEXIS 3989, 2019 WL 2443533 (Cal. Ct. App. June 12, 2019). Plaintiffs therefore contend, consistent with *Jercich*, that they have sufficiently alleged an associated, intentional tort: Defendants'

---

[2] The Elder Abuse statute protects persons sixty-five and older. *See* Cal. Welf. & Inst. Code § 15610.27.

intentional failure to make Note payments which deprived Plaintiffs of their "property rights" under the Note, which Defendants knew or should have known would likely harm Plaintiffs' financial well-being. Plaintiffs also assert that Defendants' conduct was willful and malicious under § 523(a)(6).

Plaintiffs' reliance on *Jercich* is misplaced. In *Jercich*, the Ninth Circuit addressed factual findings that Jercich deliberately chose not to pay his employee and instead used the "payroll money" for personal investments, including a horse farm. The *Jercich* court determined that this contract breach violated an employer's statutory obligation under California law to pay their employees, which implicated public policy principles. *Jercich*, 238 F.3d at 1206–07. The *Jercich* court held that this violation of California labor law constituted the requisite tortious conduct needed to assert a section 523(a)(6) claim for relief. *Jercich* was followed, however, by *Lockerby v. Sierra*, 535 F.3d 1038 (9th Cir. 2008), whose holding – that intentional contract breaches are dischargeable under (a)(6) unless accompanied by conduct that constituted a tort under state law – narrowed *Jercich's* application. *Id.* at 1043. In *Sierra*, an attorney (debtor Sierra) and his client settled a malpractice suit which Sierra intentionally breached when he failed to pay his former client the agreed-upon sums. The bankruptcy court, affirmed by the district court, decided the debt was nondischargeable under § 523(a)(6) because "Sierra possessed the 'subjective intent of harming Lockerby.'" *Id.* at 1040. The Ninth Circuit reversed and held that the debt was dischargeable. *Id.* at 1044. The court noted that recent Supreme Court caselaw – *Kawaahau v. Geiger*, 523 U.S. 57 (1998) – had "specifically rejected the notion that a 'knowing breach of contract' could trigger exception to discharge under § 523(a)(6)" and that the *Geiger* Court had strongly suggested that "523(a)(6)'s exemption from discharge . . . is confined to debts "based on what the law has for generations called an intentional tort.'" *Sierra*, 535 F.3d at 1041 (quoting *Geiger*, 523 U.S. at 60–62). The Ninth Circuit further observed that *Geiger* determined that "intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself,'" and had rejected the expansion of § 523(a)(6) to "a wide range of situations in which an act is intentional, but

injury is unintended." *Id.* at 1041 (quoting *Geiger*, 523 U.S. at 61–62). The *Sierra* court concluded its analysis by stating that "[s]omething more than a knowing breach of contract is required before conduct comes within the ambit of § 523(a)(6), and *Jercich* defined that 'something more' as tortious conduct." *Id.*

While an intentional breach of contract violative of California public policy qualified as the requisite tortious conduct in *Jercich*, this argument here, after *Sierra*, is one step too facile. First, contending that an intentional breach of contract is tortious just because it falls within the Elder Abuse statute does not alter the fact that the conduct alleged herein is an intentional breach of contract unadorned by any act which "generations called an intentional tort." *Sierra*, 525 F.3d at 1041 (quoting *Geiger*, 523 U.S. at 60). As the *Jercich* court itself noted, "[u]nder California law, 'conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of *tort* law.'" *Jerich*, 238 F.3d at 1206 (emphasis added) (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 460 (Cal. 1994)). The Elder Abuse statute certainly covers such intentional torts, including fraud, conversion, and theft. But here, Plaintiffs' argument that Defendants' conduct is tortious simply because it violates the Elder Abuse statute turns § 523(a)(6) on its head, particularly since this court must narrowly construe § 523(a) discharge exceptions. *See In re Vickers*, 577 F.2d 683, 687 (9th Cir. 1978). The Elder Abuse statue has been amended several times since its enactment, and its scope now extends far beyond its original objective of protecting elders from financial hucksters. *See Crawford v. Cont'l Cas. Ins. Co.*, 2014 U.S. Dist. LEXIS 185198, 2014 WL 10988334 (C.D. Cal. July 24, 2014). Simply, Plaintiffs have not alleged the necessary intentionally tortious conduct to allow this court to consider whether the conduct at issue was also willful and malicious under § 523(a)(6).

Defendants' motion to dismiss is therefore **GRANTED**. Given that this is Plaintiffs' second attempt to allege non-dischargeable conduct, this court presumes, given

the quality of Plaintiffs' counsel, that Plaintiffs cannot allege facts demonstrating the commission of an intentional tortious act under California law. Accordingly,

**IT IS HEREBY ORDERED** that the adversary proceeding is dismissed with prejudice.

***END OF ORDER***

Adversary No. 22-1003 CN

COURT SERVICE LIST

Recipients are ECF participants.